[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
In these two actions, the respondents question the constitutionality of the Rhode Island Mechanics Lien law statutes, R.I.G.L. § 34-28-1 et seq.
 FACTS
Robert D'Amico, is a plumber from North Scituate, Rhode Island In 2003 he performed work and provided materials on property owned by Christopher Morris in Narragansett, Rhode Island Mr. D'Amico alleges that he was not compensated and the $3,500 debt continues. Pursuant to R.I.G.L § 34-28-1, Mr. D'Amico mailed a notice of intent to claim a lien upon the property to Mr. Morris. That notice was also recorded in the Land Evidence Records of the Town of Narragansett. On February 20, 2004, Mr. D'Amico filed a complaint with this Court to protect the lien. On February 23, 2004, a mechanics lien citation issued and invited Mr. Morris and the Washington Trust Company, a mortgagee, to show cause why the lien should not be enforced or allowed. In response to the citation, Mr. Morris moved to dismiss the petition to enforce and to strike the lis pendens. The motion challenged the constitutionality of the Rhode Island mechanics lien law.
The Grandeville matter comes to the Court in a different context. In February 2004 Crown Supply Company, Inc. ("Crown") mailed a notice of intention to do work and supply materials alleging that it had an outstanding bill owed by Grandeville at the Commons ("Grandeville"). Crown then recorded the notice with the Land Evidence Records of South Kingstown. Shortly thereafter, the attorney for Grandeville initiated this action by filing a petition to deposit funds and release the lien. The petition was approved on the day of filing and the Court received the bond for $10,608.93 and discharged the notice of lien on the same date the complaint was filed. Five weeks later, Grandeville moved the Court for an order discharging the bond, alleging that the mechanics lien law is unconstitutional, as it had been previously ruled unconstitutional as applied to other cases.
Ironically, both of these motions came before the Court for hearing on the same day. The cases were consolidated for purposes of consideration of this constitutional issue, and the parties were given time to brief and provide subsequent argument. As the constitutionality of the statute was at question, notice was provided to the Department of Attorney General who declined to participate in these proceedings.
It is noteworthy that neither of the moving parties question whether work was performed or materials provided. They do not question that the debt exists, they merely allege that the mechanics lien statute is unconstitutional and hence the titles to their properties should be cleared.
 BACKGROUND OF THE MECHANICS LIEN STATUTE
A mechanics lien, so called, is a claim created by statute for the purpose of securing a payment of the price of value for work performed and materials furnished in erecting or repairing a building or other structure. 53 Am. Jur. 2d Mechanics' Liens Section 1 (1996). Rhode Island's Mechanics Lien law is codified in Chapter 34-28 of the General Laws.
On April 23, 2003, Mr. Justice Silverstein, a most distinguished and learned member of this Court issued a decision in the case ofSells/Greene Building Company v. Robert B. Rossi, et al., P.B. No. 02-1019.[1] The Court balanced the three factors set forth in Matthewsv. Eldridge, 424 U.S. 319 (1976) to determine if sufficient process had been afforded prior to, or after, a deprivation. Sells/Greene, slip opinion at 22. In doing so, the Court noted the increased scrutiny which the higher courts have placed on statutes which deprive owners of their interests in property prior to a hearing.
 This Court finds that the Mechanics' Liens statute is so lacking in minimal constitutional protections that the potential governmental burden that an additional procedural requirement would entail is far outweighed by the benefits incident to the fundamental principles of due process. This Court also finds that while a potential claimant certainly has an interest in getting paid; that claimant, like all others, can suffer through the constitutionally-required exercise of a hearing prior to depriving the property owner of the process which is due.
 * * *
 This statute fails to provide the procedural due process rights required by the Fourteenth Amendment to the United States Constitution and by Article 1, Section 2 of the Rhode Island Constitution. Sells/Greene, Slip Opinion, pp. 28, 29.
The Court concluded by holding the mechanics lien law as it existed in 2002, was unconstitutional. Sells/Greene, slip opinion, pp. 28.[2]
Other Rhode Island Superior Court justices soon concurred. On August 1, 2003, Mr. Justice Pfeiffer entered a Decision in Kinetic Systems,Inc. v. Rhode Island Industrial Facilities Corporation and RhodesTechnologies, Inc., KM 02-616, following the decision of Sells/Greene. InKinetic, the Court "agrees with Judge Silverstein's well-reasoned decision and finds that the Mechanics' Lien Statute is unconstitutional in derogation of the United States Constitution and Rhode Island Constitution." Slip opinion at page 2. The Sells/Greene case was appealed to the Rhode Island Supreme Court for further review, where it is now pending.
The Rhode Island General Assembly was prompt to respond to the pending constitutional controversy. During the 2003 legislative session, the legislature enacted Public Law 2003, Chapter 269, establishing a new section of the General Laws. Section 34-28-17.1 of the General Laws took effect on July 17, 2003. The new statute allowed any person in interest (including the owner or contractor) to challenge the validity of a claimed lien in the Superior Court. The Superior Court would then issue an order of notice and a show cause hearing would be set within one week's time to determine
 why the relief demanded in the complaint should not be granted. . . . Upon granting or denying the application, the Court shall enter an order or judgment as applicable on the matter involved. R.I.G.L. § 34-28-17.1(b).
In sum, the statute set in place a `fast track' procedural mechanism to test the sufficiency of any lien. The lien can be tested as soon as it is recorded against the property or even claimed. This appears to have resolved, in large part, one of the precise issues discussed in theSells/Greene decision, namely, the time in which a court hearing would be held after the deprivation occurred. As the Sells/Greene decision noted (regarding the old statute):
 In fact, from the time that a notice of intention is recorded, a person seeking to enforce a lien has a statutorily-granted 120 day period in which a petition to enforce must be filed. Thus, a potential claimant may wait four months from the time of recording the notice of intention before an enforcement action is commenced. But the wait for the property owner seeking to contest the lien is not over even at this point. Rather it is up to the property owner to file an objection to the enforcement action with the Court and to seek a hearing date at some point thereon. The statute does not provide for any immediate hearing, nor does the statute provide for any time period within which a hearing must take place. In the meantime, the untested lien remains on the owner's property. Sells/Greene Slip. Op. p. 26
By its enactment of a 2003 statute, the Legislature provided for notice to the owner of his right to a hearing, and a prompt hearing. This eliminated the indefinite delays in the old procedure, and provided the owner with a hearing at a meaningful time and in a meaningful manner.
This Court revisited the constitutionality of the mechanics' lien statutes on February 9, 2004, in DeSimone Electric, Inc. v. CCMG, Inc.,et al., PM 01-6077. Although this case was decided after the 2003 statutory amendment, it appears that the mechanics' liens were recorded in 2001, bonds were filed in 2001 and 2002, and the case was tried, all prior to the enactment of R.I.G.L. § 34-28-17.1. Hence, the property owners never had the opportunity to accelerate a court hearing on the propriety of the taking until long after the liens were recorded.[3]
Nevertheless, the Court discussed the 2003 revision finding it
 constitutionally infirm as it makes no provision for a hearing before the filing of the lien, does not delineate precisely when after the lien's filing the hearing will take place, and still requires the property owner to initiate any opportunity for hearing. DeSimone Electric, slip opinion, p. 15.
Although the Court found that the 2003 amendments were applicable to cases pending at that time, it is obvious that a prompt opportunity to be heard could not have occurred in DeSimone, as the alleged deprivation commenced some two years earlier.
On January 27, 2004, this Court issued a decision in the matter ofWilliam N. Harris, Inc. v. Ralph R. Papitto, PM 02-5679. Again, this Court held the mechanics lien statute to be unconstitutional. The Court applied the statute as amended in July, 2003, but noted that the deprivation occurred when the lien was placed on the property in 2002. Accordingly, the Court concluded a show cause hearing under the statute could not have occurred until one year after the alleged deprivation.
The cases at bar are distinguishable. Alleged deprivations occurred after the 2003 statute was enacted and effective. The owners had an opportunity to seek a hearing immediately upon the receipt of a notice of intention, R.I.G.L. § 34-28-17.1(a)(2), or a claimed lien, R.I.G.L. §34-28-17.1(a)(4). Pursuant to the new statutory framework, when an owner claims an improper lien is alleged
 . . . then in such event, such person may apply forthwith to the superior court for the county where the land lies for an order to show cause why the lien in question is invalid, or otherwise void, or the basis of the lien is without probability of a judgment rendered in favor of the lienor. R.I.G.L. § 34-28-17.1(a).
A show cause citation issues forthwith and is served promptly.
In the two cases at bar, neither party requested an immediate show cause hearing. Instead, both property owners come to this Court claiming their inability to have a predeprivation hearing, though they never requested a hearing on the taking.
 CONSTITUTIONALITY
In bringing these actions, Petitioners have sought to have this Court declare the mechanics lien statutes to be constitutionally infirm. They cite other Superior Court cases holding provisions of the mechanics lien statute unconstitutional, and suggest the same conclusion should result here. This Court treads lightly on declaring statutes unconstitutional. As a recent Rhode Island Supreme Court opinion said:
 We do so [consider the constitutionality of a statute], however, in light of the well established principle that this court "will refrain from passing on question when it is clear that the case before us can be decided on another point and that a determination of such a question is not indispensably necessary for a disposition of the case." Mosby v. Devine, 851 A.2d 1031, 1034 (2004) (Citations deleted).
Respect for the coordinate branches of government and the Constitution itself, impels this Court to consider the statute as applied to the particular set of facts in the case(s) before it.
Established principles of statutory construction display the reluctance of the courts to question the constitutionality of a statute. When challenging the constitutionality of a statute, every presumption favors the validity of an act of the Legislature. All doubts must be resolved in support of the act. United States v. Rumely, 325 U.S. 41, 97 L.Ed. 770,73 S.Ct. 543 (1953). Hence, it is the obligation of one challenging the constitutionality of a statute to demonstrate that the operation of the statute is unconstitutional as applied to his or her situation. State v.Fonseca, 670 A.2d 1237 (R.I., 1996). In Re Advisory Opinion to theGovernor (DEPCO), 593 A.2d 943 (R.I., 1991). When a number of interpretations can render a statute unconstitutional, a reasonable constitutional alternative should be used if it is available. R.I. StatePolice v. Madison, 508 A.2d 678 (R.I. 1986). If a law is constitutional in part, but unconstitutional as to some of its provisions, the part that is constitutional will be sustained unless the entire scope and object of the law is defeated by rejecting the objectionable features. VermontRight to Life Committee, Inc. v. Sorrell, 221 F. 3d 376 (C.A. 2, 2000).
 STANDING
The facts surrounding the Grandeville case are particularly noteworthy. Not only did the property owner forego the opportunity to obtain a hearing, but upon receipt of the notice of intention (and apparently prior to the recording) it failed to employ the hearing mechanism provided in the new statute. Two weeks after the filing of the lien in the Land Evidence Records, Grandeville commenced an independent action to deposit funds and release the liens. On the same day this independent action was filed, the Court entered an ex-parte order allowing the owner to deposit a bond thereby discharging the lien on the real estate. (In Re Grandeville, WM No. 04-126). The property owner elected to forego the filing of a petition to show cause, and the opportunity for a prompt hearing. Instead, the owner filed an independent action[4] to immediately have the lien discharged. The lien was
promptly discharged. Though Grandeville comes to the Court challenging the constitutionality of the mechanics' lien statute, it has no mechanics' lien on its property.
Unlike the prior decisions of this Court, the facts of these two cases at bar afforded the property owners the opportunity for prompt hearings upon the filing of the liens. The statute specifically creates a procedural framework which provides for prompt hearings. In Grandeville, the owner found a more expeditious, ex parte route.
The Rhode Island Supreme Court has recently outlined the criteria for standing:
 Turning first to the issue of standing, this Court has held that a plaintiff has standing when "the plaintiff alleges that the challenged action has caused him [or her] injury in fact, economic or otherwise." Rhode Island Ophthalmological Society v. Cannon, 113 R.I. 16, 22, 317 A.2d 124, 128 (1974). In making this determination, "[t]he line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury." Matunuck Beach Hotel, Inc. v. Sheldon, 121 R.I. 386, 396, 399 A.2d 489, 494 (1979). We have also held that a taxpayer has standing if the individual has a "personal stake beyond that shared by all other members of the public at large or the taxpayers of the town." West Warwick School Committee v. Souliere, 626 A.2d 1280, 1284 (R.I. 1993). Cummings v. Shorey, 761 A.2d 680, 684 (R.I. 2000)
Grandeville has no mechanics lien on its property. It lacks injury in fact and standing. On occasion, the courts have bypassed the standing requirement to contest significant issues,[5] but Grandeville employed a method to intentionally circumvent the lien. Allowing it to challenge the lien serves no purpose. Grandeville's motion to discharge the bond based on the unconstitutionality of the mechanics lien statute is denied as Grandeville lacks standing to contest the issue.
 DUE PROCESS
To determine if the statute as applied to the case at bar affords constitutionally required due process, the Court looks to a fully developed line of case law. In Fuentes v. Shevin, 407 U.S. 67,32 L.Ed.2d 556, 92 S.Ct. 1983 (1972), the United States Supreme Court struck down Florida and Mississippi prejudgment replevin statutes for their failure to provide for predeprivation notice and opportunity to be heard. The Fuentes Court held that the hearing required by the constitutional due process rights is subject to waiver, and is not fixed in form. Fuentes, 407 U.S. at 93, 95, 571 S.Ct. at 571, 579. Fuentes was deprived of her gas stove and other appliances as a result of language in a conditional sales contract which was signed without extensive bargaining by the consumer. The Court required that property holders be given an opportunity for a hearing before being deprived of a significant property interest, except in extraordinary situations. Id. at 82.
In 1991, the United States Supreme Court invalidated a Connecticut statute that permitted ex parte, prejudgment attachments of real estate in personal injury actions. Connecticut v. Doehr, 501 U.S. 1,115 L.Ed.2d 1, 13, 111 S.Ct. 2105 (1991). Borrowing from Matthews v.Eldridge, 424 U.S. 319, 343-44, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976) the Court adopted a formal test (hereinafter "the Doehr test") for analyzing the sufficiency of the prejudgment deprivation:
 [T]he relevant inquiry requires, . . . first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, . . . principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or foregoing the added burden of providing greater protections. Doehr, 501 U.S. at 11.
Just two years after Doehr, the Court again considered the extent of notice and opportunity to be heard for due process considerations inUnited States v. James Daniel Good Real Property, 510 U.S. 43,126 L.Ed.2d 490, 114 S.Ct. 492 (1993). Citing language of Fuentes, the Court declared:
 "We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in `extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" Id. at 53 (citations and quotations omitted).
 APPLICATION OF THE DOEHR TEST
Under the first prong of the Doehr test, the Court considers the private interest affected. There is no doubt that a defendant has a substantial and sufficient property interest in real property which it owns, even when used for commercial development.
The concept of all private property is an important concept in the United States Constitution itself, clearly referenced in Amendments V and XIV. Doehr 501 U.S. at 11-12, 111 S.Ct. at 2113 notes the significant harms that may result from an attachment of real estate. Nevertheless, the Rhode Island mechanics' lien may not constitute an attachment, per se, as any encumbrance on the title is temporary and the owner is not at risk of losing any incidents of ownership before the hearing. There is no physical removal from the property. In Spielman-Fond, Inc. v. Hanson'sInc., 379 F.Supp. 997 (Ariz., 1973) a three judge court held that the filing of a mechanics' lien did not amount to the taking of significant property interest. This case was affirmed on other grounds at417 U.S. 901, 41 L.Ed.2d 208, 94 S.Ct. 2596 (1974). See Doehr footnote 4.
The second prong is more problematic. The Doehr test suggests "an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards." Doehr at 11. In this case at bar, (D'Amico v. Morris) the deprivation, if it were to occur at all, could have been challenged at a prompt Superior Court hearing, held within days, rather than years. R.I.G.L. section 34-28-17.1(b).
The new statute allows any person in interest (including the owner or contractor) to challenge the validity of a claimed lien in the Superior Court. The Superior Court would then issue an order of notice and a show cause hearing would be set within one week's time to determine:
 why the relief demanded in the complaint should not be granted. . . . Upon granting or denying the application, the Court shall enter an order or judgment as applicable on the matter involved. R.I.G.L. § 34-28-17.1(b).
Rather than moving to dismiss the mechanics lien, Mr. Morris could have taken immediate action, even before the filing of the action against him. By way of the show cause citation and hearing, Mr. Morris would have the opportunity to promptly question the sufficiency of the potential lien. In his supplemental memorandum of May 2004 at page 2, Mr. Morris alleges that the statute is ambiguous concerning which party carries the burden of proof. It is not. Although the property owner avails himself with the opportunity for hearing by the `fast track' action, a show cause citation is issued by the court clerk requiring the potential lien holder to demonstrate "why the relief demanded in the complaint should not be granted." R.I.G.L. 34-28-17.1 (b). While the Court does not reach this issue here, it appears that the same statute allows for the show cause hearing even before a lien is recorded at the registry of deeds. Accordingly, the statute provides a mechanism whereby, even before the deprivation, a hearing may be held. The statutory framework continues to allow for property owners to `bond out', as Grandeville did, removing any title defect on the property. R.I.G.L. 34-28-17.
Post deprivation hearings are constitutionally sufficient in many instances. A post-revocation hearing has been held sufficient when a driver's license is revoked based on numerous traffic violations or accidents. Dixon v. Love, 431 U.S. 105, 113 (1977). Because the appropriate level of constitutional protection depends on context, "there are situations where some form of pre-deprivation hearing is required and others where a predeprivation hearing is unnecessary." McClelland v.Massinga, 786 F.2d 1205, 1211 (C.A.4, 1986).
The significant infirmities highlighted in Sells/Greene[6] have been eliminated. A debtor is no longer left in limbo to await a hearing that might eventually occur. See Mitchell at 618, cited by Sells/Greene slip opinion at 15. The new statute, apparently in direct response to Sells/Greene, provided for a prompt hearing and additional constitutional safeguards. Indeed, the chronology of events supports this Court's conclusion that the General Assembly heeded to the warnings of the case developments, considered the "procedures under attack and the probable value of additional or alternative safeguards", Doehr at 11, and indeed, adopted the additional safeguards.[7] Accordingly, the Court finds that the risk of erroneous deprivation is minimal and any deprivation is, once again, short lived.
The third prong of the Doehr test requires the court to consider the creditor's interest in seeking the prejudgment remedy with regard to the government's regulatory interest and the fiscal and administrative burdens that additional procedural safeguards would require. Doehr,501 U.S. at 11, 111 S.Ct. at 2112. It is noteworthy that the mechanics lien procedure is designed to assist creditors in being compensated for work or materials which they supply to land owned by others. See R.I.G.L. 34-28-4. It is a mechanism to ensure that bills are paid for work already done, or agreed to be done. Because the previous mechanics lien statute lacked adequate safeguards, much of the case law addresses the plight of the debtor. Having reached the third prong, the creditors' interests are worthy of consideration.
Mr. D'Amico's interests exemplify the type of creditor the statute is designed to protect. He performed plumbing work (and supplied materials) resulting in an invoice of $3500. Obviously, the debt remains unsatisfied. It is reasonable for him to seek security from the propertyon which he performed the work. As a result of the recorded lien, those who take title to the property will have notice of this alleged debt. It is not uncommon for title to real property to change several times during construction and development. While the true owner of the property may not be evident to the laborer-creditor, the property receives the benefit. Cognizant of these issues, the legislature sought to strike a balance between the interests of creditor and debtor. When interpreting a statute, the Court's ultimate goal is to give effect to the General Assembly's intent. Martone v. Johnston School Committee, 824 A.2d, 426
(R.I. 2003). See also Keystone Elevator v. Johnson Wales University,
850 A.2d 912, 923 (2004).
Mindful that "unlike some legal rules, [due process] is not a technical conception with a fixed content unrelated to time, place, and circumstances," Connecticut v. Doehr, 501 U.S. 1, 19 (1991) (internal quotation marks and citation omitted), the Court finds that new statutory enactment appropriately addresses the interest of the creditors. R.I.G.L. 34-28-17.1 balances the interest of debtor and creditor and establishes appropriate and adequate procedural safeguards to comport with due process requirements. It does so while placing a significant burden on the Superior Court, its clerks, sheriffs and other process-servers in requiring such a prompt hearing procedure. However, the Court recognizes that this burden is placed to ensure that constitutional hearing requirements are fulfilled. Thus, the amended statute satisfies the third prong of the Doehr test.
 CONCLUSION
Accordingly, the Court finds that the provisions of R.I.G.L. section 34-28.17.1(a) are constitutionally valid as applied to these actions. Unlike previous actions considered by this Court, the property owners here were afforded a prompt opportunity to be heard. The General Assembly resolved the constitutional infirmities in the statute, in a manner that affords due process.
The motion of Mr. Morris to dismiss the petition of Mr. D'Amico is denied. The motion of Grandeville to discharge the bond is denied. Counsel may submit appropriate orders.
[1] The Sells/Greene matter was consolidated with Gem Plumbing Heating Co., Inc. v. Robert B. Rossi and Linda A. Rossi, P.B. No. 02-2778 for the purpose of resolving the constitutionality of the mechanics' lien statute.
[2] The court provided a detailed analysis of the United States Supreme Court cases on procedural due process. Its citation of Mitchell v. W.T.Grant Co., 416 U.S. 600 (1974), on page 15 of the slip opinion is noteworthy here:
 "Under Louisiana procedure . . . the debtor . . . was not left in limbo to await a hearing that might or might not `eventually' occur, as the debtors were under the statutory schemes before the Court in Fuentes. Louisiana law expressly provides for an immediate hearing and dissolution of the writ `unless the plaintiff proves the grounds upon which the writ was issued.'" Id at 618.
[3] The 2003 amendment to the statute indicated that the statute would be applicable to pending cases.
[4] Ironically, Grandeville, who complains of a lack of due process, obtained ex parte relief to have the lien discharged.
[5] The Court rarely allows participation in a suit, absent substantial injury in fact. In an action where bidders alleged they were unfairly excluded from the bidding process the court held:
 Once the requirement of injury in fact has been satisfied, we have permitted plaintiffs to "assert the broader claims of the public at large," in order to vindicate the public interest. Blackstone Valley Chamber of Commerce v. Public Utilities Commission, 452 A.2d 931 at 933. (R.I., 2000) Nevertheless, the touchstone of our standing requirement remains "whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues upon which the court depends for an illumination of the questions presented." Id. (citing Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962)). Associated Builders Contractors of Rhode Island, Inc. v. Department of Admin., 787 A.2d 1179, 1184 (R.I. 2002).
[6] In Sells/Greene, Justice Silverstein found "Once the notice has been recorded, the lien is perfected and the negative repercussions to the property owner begin to flow. These repercussions flow regardless of the truth, accuracy or validity of the claimed amounts due under the lien. These repercussions flow before any judicial determination has been made as to the validity of the lien. In fact, these repercussions flow before any judge of any court has ever seen the notice of intention. And, most significantly, these repercussions flow before the property owner has any opportunity whatsoever to challenge the truth, accuracy or validity of the amounts claimed under the lien." Sells/Greene, slip opinion, 25-26.
[7] The parties have not extensively addressed the type of harm that would occur during the brief period of deprivation, prior to the show cause hearing. While the Sells/Greene case warned of the harm to legal title, an impaired credit rating and the inability of the owner to sell the land to avoid the debt (Sells/Greene slip opinion, pp. 23-24), these harms would be mitigated, if not eliminated by the `fast track' hearing.