In re TINISHA P. et al.

No. 96–161–Appeal.

Supreme Court of Rhode Island.

July 7, 1997.

Frank P. Iacono, Jr., East Greenwich, Anthony E. Angeli, Jr., Providence, Regina M. *Gibb*, Wakefield, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

WEISBERGER, Chief Justice.

This is an appeal by a mother from a judgment entered in the Family Court terminating her parental rights in respect to three of her children. We affirm the judgment of the Family Court and deny and dismiss the mother's appeal. The facts of the case insofar as pertinent to this appeal are as follows.

The mother in this case has given birth to seven children. Of these seven children, one has been adopted, one has been placed with St. Joseph's Home for Children, four are residing with relatives, and her most recent child, Tracie, is committed to the care and custody of the Department of Children, Youth and Families (DCYF) while residing with petitioner. The three children who were the subject of this petition are Tinisha, Temika, and Janae, presently eleven, nine, and six years of age, respectively. The mother, Tina P., admitted on October 2, 1992, that the subject children were neglected and dependent, and they were committed to the care, custody, and control of DCYF. On July 16, 1993, DCYF filed petitions for involuntary termination of the mother's parental rights in respect to the subject children pursuant to G.L.1956 § 15–7–7(a)(2)(iii) and (a)(3). This statute reads as follows:

"**Termination of parental rights.**—(a) The court shall, upon a petition duly filed after notice to the parent and hearing thereon, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court, by clear and convincing evidence finds as a fact that:

\* \* \*

"(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following:

\* \* \*

"(iii) The child has been placed in the legal custody or care of the department for

children, youth, and families and the parent has a chronic substance abuse problem and the parent's prognosis indicates that the child will not be able to return to the custody of the parent within a reasonable period of time, considering the child's age and the need for a permanent home. The fact that a parent has been unable to provide care for a child for a period of twelve (12) months due to substance abuse shall constitute prima facie evidence of a chronic substance abuse problem.

\* \* \*

"(3) The child has been placed in the legal custody or care of the department for children, youth, and families for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided further that there is not a substantial probability that the child will be able to return to the parents['] care within a reasonable period of time considering the child's age and the need for a permanent home."

In support of its petitions, DCYF presented evidence that the mother had admitted to both drug and alcohol abuse and that she had been referred to a number of programs for treatment. An outline of these programs and her response thereto follows.

On May 4, 1992, DCYF referred the mother to a St. Joseph Hospital program for substance-abuse treatment. On July 15, 1992, the mother informed Rose Ann Fowler, a DCYF social case worker, that she had not entered the program in spite of an offer of transportation because this program would not meet her needs. She stated that a more intensive residential program would be more appropriate.

Thereafter the mother was referred to the Roger Williams Hospital detoxification program in August of 1992. She then enrolled in an Eastman House residential-treatment facility. On August 31, 1992, she was discharged without having completed the program.

On September 4, 1992, prior to a hearing in Family Court, she was questioned by a DCYF caseworker concerning her use of alcohol and she admitted to having had a few beers, the aroma of which was still apparent. On October 2, 1992, a justice of the Family Court ordered the mother to enter a residential-treatment facility when a bed became available.

On December 25, 1992, the mother delivered another child, Jerome, who tested positive for cocaine at birth. A new social worker was assigned to the family in January 1993. On January 28 of that year the mother admitted to having smoked crack cocaine a short time earlier. On February 24, 1993, she informed the new social worker, William O'Donnell (O'Donnell), that a bed had been available for her at Marathon House but that she had not had transportation to get there. O'Donnell testified that he served as her DCYF social case worker up to and including the time of trial. He testified that she had been referred to a number of programs including the Talbot House out-patient program, Talbot House day treatment, Talbot House residential treatment, Marathon House residential treatment, and St. Joseph's Commitment to Change, but that during this period from January of 1993 until the time of trial the subject children remained in foster care and the mother did not successfully complete any of the substance-abuse programs to which she had been referred. The DCYF introduced a discharge summary from Talbot House dated May 6, 1994, which stated that her condition at the time of discharge was worse than at the time of entry, that she had often relapsed, and that she did not go either to detoxification or to residential programs.

An additional DCYF child-protective investigator, Maureen Murphy, testified that she was assigned April 11, 1994, to investigate allegations of substance abuse on the part of the mother. The mother had given birth on April 10, 1994, to a child named Jasmine. The mother admitted to using cocaine on two occasions during her pregnancy.

On the positive side, Janet A. Quirk (Quirk), who was a case manager of the SStarbirth Program, testified that the mother entered this program in May of 1995 and committed herself to the program for a period of one year. Quirk testified on November

20, 1995, at the termination proceeding. She testified that at the time the mother was admitted into SStarbirth, she had tested positive for cocaine. Quirk asserted that she believed the mother would successfully graduate in May of 1996, and would then become involved in an after-care program. On September 5, 1995, the mother gave birth to Tracie, who has remained with the mother and who at the time of trial resided with her mother at the SStarbirth program.

On December 4, 1995, a justice of the Family Court found that the mother had neglected Jasmine. On November 27, 1995, Jasmine's father obtained custody of the child. On November 3, 1995, the mother admitted that Tracie was a neglected child. Tracie was committed to the care, custody, and control of DCYF, which allowed possession to remain with the mother so long as she cooperated with substance-abuse treatment.

The mother testified that the three subject children had been in DCYF's care for approximately two and one-half years. She further stated that her substance-abuse problem consisted largely of smoking crack cocaine and that she began using drugs in 1985 at the age of seventeen. The mother testified on June 20, 1995, that she had last smoked crack cocaine within the past three months and that she entered the SStarbirth treatment program in May of 1995.

The trial justice made the following findings prior to entering judgment granting the termination-of-parental-rights petitions as of December 4, 1995:

"[I]t is clear that this mother has never had a successful long stretch in residential treatment facility.

\* \* \*

"This mother is clearly not fit at this time to parent the three children who are the subject of these TPR petitions. She has indeed begun another long-term program at SStarbirth, but it is at most halfway through, and based on her history there is nothing to convince this court at this point in time that she is fit to mother or parent these children \* \* \*.

1. It is undisputed that the mother did graduate in May of 1996 from the SStarbirth program and

\* \* \*

"I'm satisfied at this point in time that the department has sustained its burden by clear and convincing evidence; that this mother is unfit by virtue of the excessive use of drugs and alcohol to the extent that it renders her unable to properly parent her children in question \* \* \*."

After the entry of judgment, counsel for the mother requested the trial justice to allow the mother to have visitation with the three children pending appeal. The trial justice did allow visitation with the consent of DCYF. The judgment of termination was entered December 6, 1995. The mother filed timely notices of appeal.

■ In support of her appeal the mother contends that the evidence presented at the termination hearing was not sufficient to sustain the state's burden of proving that Tina P. was an unfit parent. The mother further argues that although her prior attempts to complete treatment programs had been unsuccessful, the trial justice gave insufficient weight to Quirk's testimony that there was a good possibility that she would successfully complete the SStarbirth program.[1] She argues that the subject children had bonded with the mother and that the relationship has been a loving and affectionate one. In response to these same arguments the trial justice noted:

"[B]ased on the history \* \* \* it is clear that this mother has never had a successful long stretch in a residential treatment facility \* \* \* I can say as of today, December 4, 1995 \* \* \* defendant mother is clearly not, based on her history, able to successfully complete a drug residential program \* \* \*. [B]ased on her history there is nothing to convince this court at this point in time that she is fit to mother or parent these children \* \* \*.

\* \* \*

"The grounds for termination are not that she has or has not bonded with her children, and the grounds for termination are not that these children are or are not in pre-adoptive homes. The grounds for ter-

that she is now engaged in the follow-up program.

mination is that this mother is unfit by reason of an excessive use of drugs."

The trial justice went on to discuss the needs of the children for permanency and weighed this need against the argument in respect to bonding:

"To argue that these children don't deserve permanency because of a bond is also something else I should mention. That certainly had to enter into my decision, the existence of this bond, that was testified to, and I found myself saying that the fact that there was a bond doesn't unfortunately mitigate against termination because these children have a right to permanency * * *. I think my obligation is to provide the opportunity for permanency for these children, not necessarily that they're in a permanent adoptive home now but there is an opportunity for permanency."

Counsel for the mother argues that on the totality of the evidence there was insufficient proof to constitute clear and convincing evidence of the unfitness of the mother in this case as required by *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) and § 15–7–7(a). *See In re Antonio G.,* 657 A.2d 1052, 1057 (R.I.1995); *see also In re Kristina L.,* 520 A.2d 574 (R.I.1987). We must respectfully disagree.

It is our responsibility to review the findings of the trial justice at the time her decision was rendered. Our standard of review is to determine whether such findings were supported by competent evidence or whether, in making her factual determinations, the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong. *In re William, Susan, and Joseph,* 448 A.2d 1250, 1257 (R.I.1982). We have further held that the findings of a trial justice made without the intervention of a jury are entitled to great deference and will not be disturbed on appeal unless the trial justice misconceived or overlooked material evidence or is otherwise clearly wrong. *In re Joseph,* 420 A.2d 85, 89 (R.I.1980).

Our review of the record indicates that the trial justice's findings were supported by overwhelming, competent evidence of a long history of drug and alcohol abuse. She did not overlook any relevant or material evidence and gave due weight to the testimony that was favorable to the mother. She recognized the mother's progress at SStarbirth but found that this progress did not override other evidence that compelled a finding of unfitness to parent the subject children. Although the trial justice recognized her ability to care for her youngest child, Tracie, while attending the SStarbirth program, such recognition did not extend to the subject children and was in accordance with *In re Amanda C.,* 688 A.2d 863 (R.I.1997).

For the reasons stated, the appeal of the mother is denied and dismissed. The judgment entered in the Family Court terminating the mother's parental rights in respect to Tinisha, Temika, and Janae is affirmed. The papers in the case may be remanded to the Family Court.

GOLDBERG, J., did not participate.