399 A.2d 489.

MATUNUCK BEACH HOTEL, INC. *d/b/a* DRIFTWOOD RESTAURANT *vs.* FOSTER SHELDON *et al.*

LEWIS B. BISCHOFF *et al. vs.* DEEB G. SARKAS, *Liquor Control Adm'r.*

MARCH 27, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

388

JOSLIN, J.   These three cases involve the Matunuck Beach Hotel, Inc. (the hotel), a tavern located in the town of South Kingstown, and its attempts to obtain a liquor license. In one of the cases we issued a writ of certiorari to review a decision of the state liquor control administrator (the administrator) overruling the local license commissioners' (the commissioners) denial of the hotel's initial application for an annual class B tavern alcoholic beverage license. *Bischoff* v. *Sarkas,* 117 R.I. 903, 360 A.2d 879 (1976). In another case, we issued a writ of certiorari to review the administrator's overruling of the commissioners' denial of a renewal of that license. *Bischoff* v. *Sarkas,* 117 R.I. 993, 371 A.2d 275 (1977). In the third case, we consider the town clerk's appeal from the issuance by the Superior Court of a writ of mandamus ordering him to issue a class B license to the hotel. *Matunuck Beach Hotel, Inc.* v. *Sheldon,* 384 A.2d 1071 (R.I., 1976). The three cases were consolidated for argument and their facts, though undisputed, are interwoven and somewhat complex.[1]

## THE FACTS

In 1975 the South Kingston zoning ordinance provided that alcoholic beverages could not be sold on premises located in a commercial waterfront district without a special exception permitting that use. The hotel was located in such a district and, sometime in 1975, it applied for a special exception. The town's zoning board denied that application.

---

[1]There are three other cases pending in this court that could have been consolidated with those now before us. They involve a review of the administrator's decision ordering a second renewal of the hotel's class B license, *Coffin* v. *Pastore,* 387 A.2d 1074 (R.I., petition for certiorari filed May 17, 1978); a petition for mandamus to compel issuance of a second renewal license, *Matunuck Beach Hotel, Inc.* v. *Sheldon,* No. 78-309-A. (R.I., docketed Aug. 17, 1978); and a complaint to enjoin the hotel from violating the town's zoning ordinance, *Town of South Kingstown* v. *Matunuck Beach Hotel, Inc., id.*

On appeal, the Superior Court reversed and remanded the case, directing the board to grant the hotel a special exception.

The zoning board complied with the Superior Court's order and granted the special exception on June 16, 1975. Even though the special exception had been granted, almost a year passed before the hotel applied to the commissioners for a liquor license. By then, however, the zoning ordinance had been revised to prohibit the use of premises located in a commercial waterfront district for the sale of alcoholic beverages. Accordingly, the commissioners denied the application on the strength of that prohibition and of another provision of the zoning ordinance stating that no license should be issued for the conduct of any business or the performance of any act that violated the town's zoning ordinance.[2]

The hotel appealed that decision to the administrator, who reversed on the ground that the special exception issued by the zoning board at the direction of the Superior Court was still operative and prevailed over the ordinance provisions relied upon by the commissioners.[3] We granted the commissioners' petition for certiorari to review that decision. Essentially the same scenario was repeated in November 1976, when the hotel applied for a renewal of its liquor license and we again granted the commissioners' petition to review the administrator's decision.

On the same date that the commissioners initiated the first certiorari proceeding, the hotel, relying on the administrator's decision in its favor, requested the town clerk to issue a liquor license. He refused and the hotel petitioned the Superior

---

[2]A third ground relied upon by the commissioners, but rejected by the administrator on the subsequent appeal, was that to grant a class B license to the hotel would result in there being more class B licenses in the town than were authorized by local law. We do not reach this issue because our view on the zoning question is dispositive.

[3]Article IX, §4 of the zoning ordinance provides that a special exception remains valid for 1 year after issuance.

Court for a writ of mandamus to compel him to take that action. The writ issued and the clerk appealed to this court.

## The Certiorari Cases

At the threshold we consider whether the commissioners had standing to seek judicial review of the administrator's decision. If they did, we must then decide what procedural route they should have followed to obtain that review. Because our case law on these questions is far from clear, we are required to reexamine closely several cases in order to ameliorate the existing confusion in this area.

Our starting point is *Tillinghast* v. *Brown University*, 24 R.I. 179, 52 A. 891 (1902), where we said that the rule generally followed in construing statutes containing a standing or aggrievement requirement

> "is that a party is aggrieved by the judgment or decree when it operates on his rights of property or bears directly upon his interest. [citation omitted] The word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation." *Id.* at 183-84, 52 A. at 892.

The *Tillinghast* rule was for many years consistently followed by this court. *See, e.g., Hassell* v. *Zoning Board of Review*, 108 R.I. 349, 275 A.2d 646 (1971); *Malinou* v. *Kiernan*, 107 R.I. 342, 267 A.2d 692 (1970); *Jeffrey* v. *Platting Board of Review*, 103 R.I. 578, 239 A.2d 731 (1968); *Paterson* v. *Corcoran*, 100 R.I. 475, 217 A.2d 88 (1966); *Malinou* v. *Mears*, 97 R.I. 15, 195 A.2d 232 (1963); *Greene* v. *Willis*, 47 R.I. 251, 132 A. 545, *rehearing denied*, 47 R.I. 375, 133 A. 651 (1926); *McKenna* v. *McKenna*, 29 R.I. 224, 69 A. 844 (1908); *cf. Vermette* v. *Cirillo*, 114 R.I. 66, 328 A.2d 419 (1974); *Roullard* v. *McSoley*, 54 R.I. 232, 172 A. 326 (1934); *Hall* v. *Burgess*, 40 R.I. 314, 100 A. 1013 (1917) (cases holding that the administrator or executor of an estate comes within the *Tillinghast* rule because of injury suffered in his representative capacity).

In recent years, however, and particularly since the enactment of the Administrative Procedures Act (APA), G.L. 1956 (1977 Reenactment) ch. 35 of tit. 42, the trend has been away from that rule and in the direction of a more liberal standard. The trend began with *Newport National Bank* v. *Providence Institution for Savings*, 101 R.I. 614, 226 A.2d 137 (1967), where we held that competing banking institutions were aggrieved within the contemplation of sections 15(a) and (b) of the APA[4] and could therefore seek review in the Superior Court of a decision of the Board of Bank Incorporation allowing certain banks to locate a branch bank in the same community served by the competing banks. The test we applied was

> "whether they [persons aggrieved] may be adversely affected by the administrative action and whether the realities of the situation in reason require that they have standing to seek judicial review. The better-reasoned cases hold that a person who is directly adversely affected in his economic interest by the administrative decision which he challenges has the required standing." (Citations omitted.) *Id.* at 622, 226 A.2d at 142.

Little more than a year later, however, a unanimous court in *New England Telephone & Telegraph Co.* v. *Fascio*, 105 R.I. 711, 254 A.2d 758 (1969), although citing the *Newport National Bank* case as authority, in reality cut across its grain and reverted to the more stringent *Tillinghast* rule. In that case, we held that an employer lacked standing under the APA to seek judicial review in the Superior Court of a decision of the Department of Employment Security's Board of Review granting compensation benefits to company

---

[4]General Laws 1956 (1977 Reenactment) §42-35-15 provides, in pertinent part, that:

> "Any person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter."

> "Proceedings for review are instituted by filing a complaint in the superior court * * *."

employees who were on strike. We found no "substantial" injury to a "personal or property right," nor imposition of a "burden or obligation."

Not long thereafter, in *Buffi* v. *Ferri*, 106 R.I. 349, 259 A.2d 847 (1969), we faced a slightly different issue. The question there was whether the Commission for Human Rights had standing under section 16 of the APA[5] to seek review of a Superior Court judgment reversing its decision that a property owner had violated the Fair Housing Practices Act. We recognized that the public had a very real and substantial interest in protecting the right of all individuals to equal housing opportunities regardless of race, color, religion, or country of ancestral origin. It was obvious, however, that the public interest would not be protected if the *Tillinghast* rule were strictly applied. Therefore, in order to insure protection of that public interest, we applied an exception that was first alluded to in *Board of Police Commissioners* v. *Reynolds*, 86 R.I. 172, 178, 133 A.2d 737, 741 (1957), and we held that the *Tillinghast* rule

> "like most rules of general application, has its exceptions. One permits an agency itself to seek review, even though not technically aggrieved, if the public has an interest in the issue which reaches out beyond that of the immediate parties." *Buffi* v. *Ferri*, 106 R.I. at 351, 259 A.2d at 849.[6]

---

[5]Section 16 of the APA reads as follows:

> "Any party in interest, if aggrieved by a final judgment of the superior or district court rendered in proceedings brought under §42-35-15, may * * * petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law involved." General Laws 1956 (1977 Reenactment) §42-35-16.

[6]*Buffi's* unqualified acknowledgement that standing should be liberally construed whenever the public had an interest in the matter sought to be reviewed is at odds with the majority view in *DeCesare* v. *Board of Elections*, 104 R.I. 136, 242 A.2d 421 (1968), that the members of a local board of canvassers, acting in their official capacities, lacked standing under the APA to seek review in the Superior Court of a decision of the State Board of Elections disagreeing with one of their own.

Finally, in *Rhode Island Ophthalmological Society* v. *Cannon*, 113 R.I. 16, 317 A.2d 124 (1974), we completely abandoned the *Tillinghast* rule when, in a case holding that ophthalmologists had standing to challenge the validity of a statute permitting optometrists to administer drugs during eye examinations, we said:

> "The *Newport National Bank* case is the precursor of today's rule. It is our belief that standing can now be determined by our adoption of the first of the *Data Processing* criteria *[Association of Data Processing Service Organizations, Inc.* v. *Camp*, 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970)]*. The question is whether the person whose standing is challenged has alleged an *injury in fact* resulting from the challenged statute. If he has, he satisfies the requirement of standing." 113 R.I. at 25-26, 317 A.2d at 129 (emphasis added.)

Moreover, the injury need not be to an economic interest to satisfy this test. Since the *Ophthalmological* decision, the injury-in-fact test has been relied upon generally to determine standing question.[7]

Furthermore, the public interest exception has been liberally applied to permit an agency to challenge a decision which, right or wrong, might otherwise be completely shielded from judicial review. This exception, as we said in *Altman* v. *School Committee*, 115 R.I. 399, 347 A.2d 37 (1975),

> "should apply when a potential challenger to an administrative action is disqualified by a literal application of the customary test and when its disqualification will inevitably result in the challenged action's, notwithstanding its possible arbitrariness, taking on a conclusive character." *Id.* at 404, 347 A.2d at 39.

---

[7]*See Rosen* v. *Restrepo*, 119 R.I. 398, 401, 380 A.2d 960, 962 (1977); *East Greenwich Yacht Club* v. *Coastal Resources Management Council*, 118 R.I. 559, 564, 376 A.2d 682, 684 (1977); *Malinou* v. *Rhode Island Hosp. Trust Nat'l Bank*, 116 R.I. 548, 550, 359 A.2d 43, 44 (1976).

Although our reasoning to this point strongly suggests that the commissioners in this case had standing under sections 15(a) and (b) of the APA to prosecute an appeal from the administrator's decisions to the Superior Court, we hesitate to accept that conclusion without considering the plurality and dissenting opinions in *Ramsay* v. *Sarkas*, 110 R.I. 590, 295 A.2d 416 (1972).[8] In that case, the local and state liquor licensing authorities disagreed about whether to permit the relocation of a liquor establishment.[9]

Both the plurality and the dissenting opinions recognized that when the public has a *substantial* interest in the outcome of a controversy, the local authority, though unable to satisfy technical rules of aggrievement, nonetheless has standing under sections 15(a) and (b) of the APA to prosecute an appeal from the state authority's decision. The two opinions disagreed, however, about whether there was a *substantial* public interest in the relocation of a liquor establishment. The plurality maintained that the public interest was insubstantial and, therefore, that the local agency lacked standing; the dissenters said that the interest was substantial and that there was standing. It seem to us now, however, that the question of standing in the public interest area, as in other areas, should not center on the quantum of the public's interest, but on whether an unfavorable outcome of the controversy will adversely affect the public interest. This conclusion is consistent with the test adopted in the *Ophthalmological* decision. It is also the view urged by Professor

---

[8]In *Ramsay*, Mr. Chief Justice Roberts, who was joined by Mr. Justice Paolino, authored the plurality opinion; Mr. Justice Powers wrote a concurring opinion; Mr. Justice Joslin, with whom Mr. Justice Kelleher joined, concurred in part and dissented in part.

[9]The concurring opinion n *Ramsay* v. *Sarkas*, 110 R.I. 590, 598, 295 A.2d 416, 420-21 (1972) took the position that a local agency lacks standing to question a decision of a state agency with which it disagrees. We reject that view because it is incompatible with the public interest exception to the standing requirements that we adopted in *Buffi* v. *Ferri*, 106 R.I. 349, 259 A.2d 847 (1969) and *Altman* v. *School Committee*, 115 R.I. 399, 347 A.2d 37 (1975), and also with the more liberal view of standing we have taken in recent cases.

Davis, who says that "one need not be *substantially* injured in order to be allowed standing. The line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury." Davis, *Administrative Law of the Seventies* §22.02-10 at 507 (1976); *see United States* v. *Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405, 2417 n.14, 37 L. Ed. 2d 254, 270 n.14 (1973). Henceforth, that standard shall govern in this state.

Although there will be cases where the line between injury and no injury will be difficult to draw, this is not one of them. The South Kingstown zoning ordinance was adopted in order to promote the public health, safety, morals, or general welfare. Certainly, the public had an interest in the values protected by that ordinance. When that interest was threatened by the administrator's decision which, if implemented, would have authorized the conduct of a business in violation of the comprehensive plan for land usage adopted by the town council, the potential adverse effect on the public at large was very real. Consequently, the commissioners had standing under sections 15(a) and (b) of the APA to seek judicial review of the administrator's decision by appealing to the Superior Court.

The availability of 'that avenue of review, however, precluded a petition for common-law certiorari[10] because, absent unusual hardship or exceptional circumstances — and neither is alleged here — certiorari will not lie if, as in this case, another adequate and direct remedy was available to correct the errors alleged. *Zito* v. *East Side Associates*, 119 R.I. 629, 630, 381 A.2d 1364, 1365 (1978); *Murphy* v. *Charlie's Home Improvement Co.*, 117 R.I. 324, 325, 366 A.2d 809, 810 (1976); *Concannon* v. *Concannon*, 116 R.I. 323, 326-27, 356 A.2d 487, 490 (1976); *Taft* v. *Tribelli*, 114

---

[10]The test for aggrievement is the same irrespective of whether the review sought is by an appeal to the courts from an administrative ruling or by certiorari to this court from a judicial decision.

R.I. 676, 678, 337 A.2d 794, 796 (1975); *Burrillville School Committee* v. *Burrillville Teachers' Association,* 110 R.I. 677, 678, 296 A.2d 464, 465 (1972); *White* v. *White,* 70 R.I. 48, 52, 36 A.2d 661, 663-64 (1944).

The writs of certiorari heretofore issued must therefore be quashed as improvidently granted.

## The Mandamus Appeal

Quashing the writs of certiorari, however, is not dispositive of the town's clerk's appeal in the mandamus proceedings. Ordinarily that appeal would not pose a serious problem because of the well-settled principle that a state license permitting the establishment and conduct of a business cannot authorize the use of the premises contrary to a lawfully enacted zoning ordinance. *Floresta, Inc.* v. *City Council,* 190 Cal. App. 2d 599, 12 Cal. Rptr. 182 (1961); *Town of Lincoln* v. *Giles,* 317 Mass. 185, 57 N.E.2d 554 (1944); *Carnabuci* v. *City of Norwalk,* 70 Ohio App. 429, 46 N.E.2d 773 (1942); *In re Veltri,* 355 Pa. 135, 49 A.2d 369 (1946); 8 McQuillan, *Municipal Corporations* §25.12 at 33 (3d ed. Rev. 1976). The clerk was constrained by this principle not to issue the license. A further constraint was that the request to him to issue the license coincided in time with the commissioners' initiation of certiorari proceedings challenging the administrator's decision. In addition, his conclusion was reinforced by the presence in this case of a local ordinance barring the issuance of any license "which would involve a violation of the zoning ordinance of this town."

Notwithstanding, some confusion exists here because under the South Kingstown zoning ordinance the sale of alcoholic beverages on premises located in a commercial waterfront district was not prohibited until after the Superior Court granted the hotel a special exception permitting it to operate under a class B liquor license. That permit would have been immunized from revocation had the hotel incurred substantial expenditures in good-faith reliance on that exception. *A. Ferland & Sons, Inc.* v. *Zoning Board of*

*Review*, 105 R.I. 275, 279, 251 A.2d 536, 538 (1969); *Shalvey v. Zoning Board of Review*, 99 R.I. 692, 699, 210 A.2d 589, 593 (1965).

The record here, however, fails to disclose that the hotel took any action in reliance on the grant of a special exception or indeed that it even applied for a class B license until the day the amendment was enacted, which was almost a year after the exception was granted. In the circumstances, therefore, the controlling legislation was the version of the zoning ordinance that was in effect at the time the administrator rendered his decision. *See Goodman v. Zoning Board of Review*, 105 R.I. 680, 683, 254 A.2d 743, 745 (1969); *Najarian Realty Corp. v. Zoning Board of Review*, 99 R.I. 465, 468, 208 A.2d 528, 530 (1965).

The administrator should have been guided by that provision and by the local ordinance barring the issuance of any license "which would involve a violation of the zoning ordinance." Had he relied on the controlling law, he would have sustained the commissioners' refusal to issue the hotel a class B license.

In issuing the writ of mandamus the Superior Court trial justice based his decision on the special exeption granted under the old zoning ordinance. Mandamus is appropriate, however, only if the petitioner has a clear legal right to have the act done which is sought by the writ and if the respondent has a ministerial and legal duty to perform. *Sun Oil Co. v. Macauley*, 72 R.I. 206, 210, 49 A.2d 917, 919 (1946). In this case, for the reasons indicated, the hotel obviously did not have that right nor the town clerk that duty. Hence, it was error to issue a writ of mandamus.

The writs of certiorari heretofore issued in these proceedings are ordered quashed as improvidently granted, and the records certified to this court are ordered remanded to the State Liquor Control Administrator with our decision endorsed thereon. The appeal of the Town Clerk of the Town of South Kingstown from the judgment of the Superior Court ordering the issuance of the writ of mandamus is

sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court.

*Moses Kando*, for Matunuck Beach Hotel, Inc. d.b.a Driftwood Restaurant.

*Dennis J. Roberts, II*, Attorney General, *Forrest Avila*, Special Assistant Attorney General, *Archibald B. Kenyon, Jr.*, Town Solicitor, South Kingstown, for Foster Sheldon et al. and Lewis B. Bischoff et al.