**In re Thomas JOSEPH.**

**Nos. 79–356–M.P., 80–124–Appeal.**

Supreme Court of Rhode Island.

Oct. 3, 1980.

---

Murphy, Mullen & Jarret, James J. Mullen, Providence, for Children's Friend & Service.

Hinckley, Allen, Salisbury & Parsons, Doris J. Licht, Providence, for Jewish Family and Children's Service.

Robert R. Nocera, Pawtucket, for Diocesan Bureau of Social Services.

Rosedale & Riffkin, Mitchell S. Riffkin, Providence, for respondents.

## OPINION

DORIS, Justice.

This is a petition for a writ of certiorari and an appeal filed by the Diocesan Bureau of Social Services, a/k/a Catholic Social Services (the bureau) seeking judicial review of two separate decrees of the Family Court wherein the bureau had sought to terminate the placement of an infant, Thomas Joseph, with the respondents, Richard and Judith Pelletier.

In the fall of 1977, the Pelletiers applied to the bureau, a duly licensed child–placement agency, to adopt an infant. After undergoing a screening process, they were approved as prospective adoptive parents.

On October 20, 1978, pursuant to an agreement executed that day, the bureau placed an infant, Thomas Joseph, with the Pelletiers "on an adoptive basis." The agreement stated that the bureau "shall have the right to remove said child from the home of said adoptive parents" if the bureau found it in the best interests of either the child or the adoptive parents to do so. The agreement further stated that in the event it did become necessary to terminate the child's placement, the bureau would "give said parents a full explanation for this removal." In turn, the Pelletiers

agreed "to give said child a free home, assuming complete financial responsibility for his/her care, maintenance, health and education (unless modified in special situations by separate amendment) with the intention of completing the adoption at the end of the period of study." The Pelletiers paid the bureau a fee for its services.

A bureau social worker was assigned to the Pelletiers pursuant to the agreement "to visit and give service to this child and to the adoptive parents." The social worker was a twenty–year–old college junior with no prior experience in the field of adoptions. She was the only representative of the bureau to visit the Pelletiers' home.

From the time of Thomas Joseph's placement in October, through August of the next year, the social worker periodically visited the Pelletiers. Apparently with each visit she became progressively dissatisfied with the Pelletiers' suitability as adoptive parents. Specifically, the social worker was displeased with the Pelletiers' alleged methods of disciplining Thomas Joseph and their difficulty in accepting guidance, and with the fact that Mrs. Pelletier had had major surgery and that her mother had to care for the child during Mrs. Pelletier's hospitalization.

The social worker obviously conveyed her doubts as to the capacity of the Pelletiers as parents to her supervisors, for on September 4, 1979, the Pelletiers were abruptly summoned to the bureau. At this time the director of the bureau handed the Pelletiers a letter indicating that the bureau was terminating the placement and requesting the return of Thomas Joseph within forty–eight hours. The letter gave four reasons for this action:

"1. The difficulty you have experienced in being able to demonstrate certain essential qualities necessary to parenting;

2. the serious difficulty you have in understanding and accepting the normal realities of the growth and development of this baby;

3. your beliefs about discipline and the actual methods you have used towards this baby;

4. your difficulty in being open to guidance and suggestions regarding your relationship to this baby."

On the day after this meeting, the director of the bureau filed a petition with the Family Court for an ex parte order requiring the immediate return of Thomas Joseph to the bureau. The petition was granted that day and citations were issued notifying the Pelletiers of the action taken and summoning them to a hearing on September 19, 1979. The citations were served on September 7, 1979, at which time the Pelletiers returned Thomas Joseph to the bureau.

At the subsequent hearing, the bureau moved to dismiss its own petition, contending that since Thomas Joseph had been returned to it, the matter was now moot. The bureau also argued that the Pelletiers, as prospective adoptive parents, had no standing to contest the bureau's decision to terminate Thomas Joseph's placement. On September 26, 1979, a Family Court justice decreed that the Pelletiers did have standing to contest the bureau's actions and denied the bureau's motion to dismiss the petition.

Thereupon the bureau filed a petition for a writ of certiorari with this court again requesting that its petition in Family Court be dismissed for the same reasons it raised below.

On October 26, 1979, the petition for certiorari was granted, contingent upon the conclusion of a full hearing in Family Court. This hearing was duly held and on March 6, 1980, a Family Court justice issued a decree ordering the ex parte order of September 5, 1979, to be vacated and directing counsel to prepare a plan within ten days for the immediate return of Thomas Joseph to the Pelletiers.

On March 12, 1980, the bureau filed an appeal from this decree with this court. Subsequently this court granted a stay to that portion of the decree directing the return of Thomas Joseph to the Pelletiers.

On May 22, 1980, an order was entered consolidating the petition for certiorari and the appeal. In addition, in the interim a supplemental Family Court decree was issued granting visitation privileges to the Pelletiers.

The bureau raises two issues on appeal. First, it argues that the Pelletiers as a prospective adoptive couple lack standing to contest the bureau's decision to terminate Thomas Joseph's placement. Second, the bureau contends that the Family Court justice abused his discretion in ordering Thomas Joseph to be returned to the Pelletiers.

The bureau argues that the parents lack standing to contest the removal of Thomas Joseph from their home because the Family Court has no jurisdiction over such an action. Because we prefer not to mix concepts of jurisdiction with those of standing, we shall discuss the issues separately.

The bureau contends that the Family Court could not have exercised jurisdiction over this dispute in the absence of some legislation expressly authorizing the court to review the decision of a child–placement agency to remove a child from the home of its prospective adoptive parents. In so contending, the bureau has misconstrued the extent of the Family Court's jurisdiction.

■ The Family Court has exclusive original jurisdiction in proceedings concerning the adoption of children, G.L.1956 (1969 Reenactment) § 14–1–5(B), and, once acquired, the jurisdiction over a child continues until the child becomes twenty–one years of age. General Laws 1956 (1969 Reenactment) § 14–1–6. Thus, although the Family Court may name a placement agency as the guardian of a child after terminating the rights of the natural parents, it does not thereby surrender its jurisdiction over the child. The discretion that G.L.1956 (1969 Reenactment) § 14–1–35 confers on an agency as a guardian to consent to the adoption of a child placed in its custody pursuant to G.L.1956 (1969 Reenactment) § 14–1–34 is not absolute; it remains subject to judicial review by the Family Court. *See Id.* (Family Court may at any time for good cause revoke or modify decree awarding custody).

■ In this case the jurisdiction of the Family Court was first invoked by the bureau when it petitioned the court for termination of the rights of the natural parents. Because Thomas Joseph has not yet reached twenty–one years of age, he is still under the jurisdiction of the Family Court. General Laws 1956 (1969 Reenactment) § 14–1–6. Although the bureau may have a right pursuant to G.L.1956 (1977 Reenactment) § 40–12–8 and the agreement entered into with the Pelletiers to have the child returned when, in its opinion, the best interests of the child required it, the opinion of the bureau on this matter is not, as the bureau argues, binding on the Family Court. In order to protect the best interests of the child, the decision of a placement agency to remove a child from the home of the prospective adoptive parents must be subject to judicial review, and the Family Court is the proper forum for such review.

Having determined that the Family Court had jurisdiction over this matter, we now consider whether the Pelletiers had standing to contest the removal of Thomas Joseph from their home.

■ In asserting that the Pelletiers' standing was contingent upon whether the Family Court had jurisdiction over the matter the bureau misapplied our law of standing. We have stated many times over the past six years that the proper inquiry in resolving an issue of standing is whether the party seeking judicial review has suffered an "injury in fact," either economic or otherwise, as a result of the statute or action in dispute. *Berberian v. Solomon,* R.I., 405 A.2d 1178, 1180 (1979); *Matunuck Beach Hotel, Inc. v. Sheldon,* R.I., 399 A.2d 489, 493–94 (1979); *Rosen v. Restrepo,* R.I., 380 A.2d 960, 962 (1977); *East Greenwich Yacht Club v. Coastal Resources Management Council,* 118 R.I. 559, 564, 376 A.2d 682, 684 (1977); *Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 26, 317 A.2d 124, 129 (1974). We have emphasized that the "injury in fact" need not be substantial. *Matunuck Beach Hotel, Inc. v.*

*Sheldon*, 399 A.2d at 494. As long as the person seeking judicial review has suffered an injury, he has the requisite personal stake in the outcome of the litigation to confer standing. *Id.*, at 399 A.2d at 494.

■ In the present case there is no dispute that Thomas Joseph was placed with the Pelletiers as a prospective adopted child and that the bureau subsequently removed him from their home. Although the Pelletiers may not have been entitled to the permanent custody of Thomas Joseph prior to filing an adoption petition, *see* G.L.1956 (1977 Reenactment) § 40–12–8, the removal of the child from their care, which would have effectively foreclosed the possibility of adoption for them, constituted an injury in fact. Having been thus injured by the bureau's action, the Pelletiers had standing to contest that action in the Family Court.

The bureau further argues that even if the Pelletiers have standing to contest the removal of Thomas Joseph, the trial justice abused his discretion in ordering the child returned to the Pelletiers. The bureau recognizes that the findings of a trial justice are entitled to great weight and will not be disturbed by this court unless the findings are clearly wrong or the trial justice misconceived or overlooked material evidence. *See Milliken v. Milliken*, R.I., 390 A.2d 934, 935 (1978); *Matracia v. Matracia*, R.I., 378 A.2d 1388, 1391 (1977). Nonetheless, the bureau contends that its decision to remove Thomas Joseph was the result of painstaking deliberations made by "experts in the field of human development."

■ In his decision the trial justice summarized the testimony of the witnesses who had testified before him and then assessed their credibility. The trial justice found that there was a total breakdown in communications between the Pelletiers and the bureau for which both parties shared the fault. The fault of the agency was directly attributable to the inexperience of the social worker and the failure of the bureau to investigate her findings and recommendations.

After reviewing the record, we are inclined to agree with the trial justice's assessment of the situation. The trial justice reached his conclusion that Thomas Joseph should be returned to the Pelletiers only after carefully weighing the evidence before him. We do not agree with the bureau's contention that the trial justice misconceived or overlooked material evidence, nor are we able to say that he was otherwise clearly wrong in reaching his decision. Accordingly, we cannot say that he abused his discretion.

The bureau's petition for certiorari and its appeal are denied and dismissed, the writ heretofore issued is quashed, and the judgment of the Family Court is affirmed.