DECISION
This matter is before the court on the motion of Nancy J. Mayer, who is sued in her capacity as Treasurer of the State of Rhode Island, (hereinafter, "the Treasurer") to dismiss the appeal of Giacomo Capizzano (hereinafter, "Capizzano") for lack of standing. Capizzano seeks judicial review of a victim's compensation award rendered in favor of a woman (hereinafter, "applicant") who based her claim on an allegation that she was sexually assaulted by Capizzano and two others, not parties to this appeal (hereinafter, "co-defendants"). The application was filed under the Criminal Compensation Act of 1996, which establishes a crime victim compensation program to be administered by the Treasurer.
I. FACTS AND TRAVEL
The pertinent facts and travel are as follows: Capizzano and the co-defendants were charged with first and second degree sexual assault of the applicant based on an incident that allegedly occurred on October 6, 1996. All three defendants pleaded "not guilty" and proceeded to mount vigorous and ultimately successful defenses to the charges. Capizzano gave a sworn statement to the police on October 7, 1996, wherein he purportedly asserted that the applicant had consented to all sexual activity.
The co-defendants were tried separately and were acquitted on April 27, 1998 following a jury trial. Capizzano was tried before the court sitting without a jury and was acquitted on June 10, 1998. Thereafter, on July 1, 1998, the trial justice ordered the criminal file in State v. Giacomo Capizzano, No. W/97-0053A sealed.
On April 17, 1997, while the criminal charges were pending, the applicant filed an application (dated March 31, 1997) for crime victim compensation. In her application, she identified Capizzano and his co-defendants by name. She described the crime and resulting injuries as "Sexual assault after closing hours in Yellow Kittens where I was working that evening. Injuries more emotional than physical."
Neither Capizzano nor the co-defendants were notified of the filing of the application. Likewise, they received no notice of the subsequent award.
On February 9, 1998, the applicant was mailed a "Notice of Award" from the Treasury Department, Crime Victim Compensation Program. She was awarded $19,904.10 for out-of-pocket medical expenses, mental health counseling expenses, and pain and suffering. The award did not identify Capizzano or his co-defendants. The applicant did not appeal the award.
The violent crimes indemnity account is insufficient to satisfy claims that have been made and decided. Consequently, there is a backlog of payments due under the Act and its predecessor, the Criminal Injuries Compensation Act of 1972. The applicant has yet to be paid.
After learning of the application and unpaid award, on May 28, 1998, Capizzano filed this action in which he objects to the award and moves to vacate it.
II. STATUTORY SCHEME
Victim compensation statutes are enacted to provide compensation to injured victims of crimes. In Rhode Island, payment to the successful claimant is made from a limited fund, the so-called "violent crimes indemnity account." R.I.G.L. 12-25-3 (g), 12-25-15 (b). Claims are paid in the chronological order in which decisions are made. R.I.G.L. 12-25-15 (e).
The pertinent compensation statute, "Criminal Injuries Compensation Act of 1996" applies to new cases filed on or after August 21, 1996. All prior victim compensation filings were determined under the "Criminal Injuries Compensation Act of 1972," as amended.
The prior Act required the claimant to file a civil action against the state in the Superior Court and to serve the Attorney General and the General Treasurer with process. Additionally, all known, alleged offenders were given notice of the filing and the right to intervene. R.I.G.L. 12-25-3 (a). The alleged offender could require that the proceedings be suspended if criminal prosecution was pending or imminent. R.I.G.L. 12-25-3(f).
Under the 1996 version, the claimant applies for compensation with the Office of the General Treasurer who is then required to provide the Attorney General with notice of the application. R.I.G.L. 12-25-19 (a). There is no requirement that notice be given to the alleged offender, nor is there a provision for the alleged offender to intervene or have the proceedings delayed. However, like the 1972 version, in the interest of justice, either the Attorney General or the program administrator can suspend proceedings while criminal prosecution is pending or imminent. R.I.G.L. 12-25-19 (f).
Whereas, the 1972 Act provides for court determination of a victim's compensation claim, the 1996 Act establishes a program to be administered by a designee of the General Treasurer. The administrator is required to investigate the application, determine whether a criminal act occurred and consider whether the behavior of the applicant directly or indirectly contributed to his or her injuries. Law enforcement agencies are required to cooperate with the administrator in this regard. In performing these duties, the administrator is required to follow rules and regulations promulgated in accordance with the Administrative Procedures Act (hereinafter, "APA"). R.I.G.L. 12-25-18 (a)-(f),12-25-19 (d)(e).
Both Acts provide for recovery against the offender, but only if such person is convicted of an offense. The state can seek recovery of all or part of the compensation paid to the victim in a separate action against the convicted offender. R.I.G.L.12-25-10, 12-25-16.
Under the 1996 Act, notice of the award is mailed to the applicant stating the amount of compensation and the reasons thereof. R.I.G.L. 12-25-18 (f). The applicant may obtain a trial de novo in the Superior Court after first appealing the administrator's decision to the Treasurer's office or to his or her designee. R.I.G.L. 12-25-18 (h)(i).
III. STANDING
Standing has been described as an "access barrier" that requires the court to assess one's credentials to bring suit. Standing entitles a party to obtain review, but not necessarily relief. Blackstone Valley Chamber of Commerce v. Public UtilitiesCommission, R.I. 452 A.2d 931 (1982). In this case, the Treasurer contends that Capizzano is without standing to object to the award. The Treasurer argues that an alleged offender who is later acquitted has no civil liability under the Act, and as such, has suffered no injury in fact as a result of the award.
The present rule of standing requires that the party seeking relief show an injury in fact, economic or otherwise, resulting from the challenged order. Blackstone Valley Chamber of Commercev. Public Utilities Commission. Id.; Rhode IslandOphthalmological Society v. Cannon, 113 R.I. 16, 317 A.2d 124
(1974). "The line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury."Matunuck Beach Hotel, Inc. v. Sheldon, 121 R.I. 386, 396,399 A.2d 489, 494 (1979).
During the banking crisis in Rhode Island, the Governor released account information to the media on persons whose accounts with closed institutions exceeded $100,000.00. A newspaper published a partial list of the depositors. Some of the depositors, including those whose names were not published, brought suit against the Governor seeking injunctive relief and monetary damages. The court found that the plaintiffs had standing to sue regardless of whether their names were published in the newspaper. The injury in fact test was satisfied by the act of releasing their names to the media which violated certain legal rights they possessed as individuals and resulted in harm.Pontbriand v. Sundlun, 699 A.2d 856 (1997).
Capizzano alleges that he was injured by the decision of the administrator. His allegation is not unlike the position taken by the plaintiff in the case of Pontbriand v. Sundlun, Id. Capizzano claims that the challenged action invades a legally protected interest resulting in harm. The court agrees.
In order to recover under the Criminal Injuries Compensation Act, there must be a finding that a criminal act has occurred. R.I.G.L. 12-25-19 (c)(1). The administrator made such a finding when she issued an award to the applicant. Thereafter, however, Capizzano was acquitted of all criminal charges. The application and award are public documents. When examined together, they suggest that Capizzano was the perpetrator of a sexual assault in spite of his acquittal.
A party who is falsely accused of a crime suffers an injury. In defamation cases, those accusations are actionable per se, without requiring proof of special damages. The law presumes that damage results from the publication of such statements. O'Brien v. Times Publishing Co., 21 R.I. 256,43 A. 101 (1899); Powers v. Carvalho, 117 R.I. 519, 368 A.2d 1242
(1977). A slanderous utterance can be actionable per se ". . . where it falsely charges a person with the commission of an offense, which, . . . if proved, while it might not subject the person accused to an ignominious punishment, would bring disgrace upon such an individual." Powers v. Carvalho, Id at p. 1249.
Capizzano's allegation that the challenged decision caused him injury is sufficient to satisfy the standing requirement.
The Treasurer next argues that Capizzano should not be permitted to seek judicial review of the administrator's award because he has failed to exhaust administrative remedies. However, the 1996 Act does not provide Capizzano with an administrative remedy. Pursuant to the Act, an applicant
challenging an award can obtain a trial de novo in the Superior Court after first appealing the administrator's decision to the Treasurer or the Treasurer's designee. R.I.G.L. 12-25-18
(g)(h)(i).
Under the 1972 Act, the alleged offender, if known, was afforded notice of the claim and the right to intervene in the action. R.I.G.L. 12-25-3. No similar provision is contained in the 1996 Act. This omission may have been intended to expedite and simplify the processing of victims' claims. However, it also serves to deny an alleged offender a vehicle to exhaust administrative remedies.
A party is not required to exhaust administrative remedies if to do so would be futile, or if the reviewing body lacks authority to entertain the challenge. Burns v. Sundlun, R.I.617 A.2d 114 (1192). Here, by statute, only the applicant can appeal at the administrative level. No administrative remedy is available to Capizzano, and his failure to exhaust such remedy will not preclude judicial review of his appeal.
IV. SUBSTANTIAL PUBLIC INTEREST
In some cases, the line between injury and no injury is difficult to draw in determining whether a party has standing to seek judicial review. Matunuck Beach Hotel, Inc. v. Sheldon,Supra. On rare occasions, the court overlooks the standing requirement to decide the merits of cases of substantial public interest. There is a tendency to confer standing liberally in matters involving significant public interest. Burns v. Sundlun,Supra. The public interest exception applies where the disqualification of a party seeking review will inevitably result in the challenged action taking on a conclusive character notwithstanding the fact that it is possibly wrongful and contrary to public interest. Altman v. School Committee of Townof Scituate, R.I. 347 A.2d 37 (1975). The issues raised by Capizzano in this matter have substantial public interest and would be shielded from review and scrutiny, but for the instant challenge.
"The manifest purpose of criminal-victim-compensation acts is the humane and remedial one of attempting to compensate innocent victims of violent crimes by providing a measure of relief where it would be futile or impossible to prosecute a civil damage claim against a financially irresponsible or unknown tortfeasor."Avers-Schaffner v. Solomon, R.I. 461 A.2d 396 (1983). The underlying reasons for the 1996 modifications to the Act may be found in the so-called "Transition Rules". R.I.G.L. 12-25-15 (h). The 1996 changes appear to have been made in response to a backlog of claims, a delay in providing compensation to claimants and a concern that assistance should be offered to greater numbers of victims.
The 1996 Act requires that notice be provided to the Attorney General and gives the Attorney General the right to have the proceedings suspended during the pendency of a criminal prosecution. R.I.G.L. 12-25-19 (f). However, notice to the Attorney General in cases where criminal charges are pending does not sufficiently protect the interests of the public in safeguarding the indemnity fund. As prosecutor for the state, the Attorney General is seeking to convict the person charged with the crime. In the criminal case, the applicant is likely to be the key witness for the prosecution. As such, the Attorney General might hesitate to challenge an allegation by an applicant that a criminal act occurred or to take steps to delay the application process.
The 1996 Act also gives the administrator discretion to suspend the proceedings while criminal action is pending if he or she determines that a suspension would be in the interest of justice. The Act requires all state and municipal law enforcement agencies to cooperate in the investigation of the claims. The administrator must investigate each application for compensation and verify the information contained therein and in all supporting documentation before issuing an award. The administrator is further obligated to consider any circumstances he or she determines to be relevant, including the behavior of the applicant, which may have directly or indirectly contributed to the injury. R.I.G.L. 12-25-18 (c)(e)(f), 12-25-19 (d)(f).
The administrator's decision to issue an award to an applicant will escape judicial review even if it is made in violation of statutory provisions; made upon unlawful procedure; clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. (See the statutory provisions governing judicial review under the APA. R.I.G.L. 42-35-15.) Although the 1996 Act does not follow the APA to the extent that an applicant is entitled to a trial de novo in the Superior Court (R.I.G.L. 12-25-18 (i)), the legislature did intend that the administrator follow the APA in promulgating rules and regulations for effectuating the provisions and overall purpose of the Act. R.I.G.L. 12-25-18 (c).
Where the alleged offenses are denied, criminal charges are pending and trial is likely, an award to an applicant may be premature and ultimately constitute a windfall to one who is not a victim of a crime. The fund will be unnecessarily taxed and the Treasurer will be unable to comply with the directive of the legislature that every effort be made to ensure that compensation awards are paid within six months of the date of application. R.I.G.L. 12-25-21. The public has a substantial interest in protecting the indemnity fund from waste. Accordingly, even absent standing on the part of Capizzano, the court would entertain the merits of the appeal.
V. CONCLUSION
For the foregoing reasons, the motion of the Treasurer to dismiss on the grounds that Capizzano lacks standing is denied. Counsel for the appellant shall submit an order and shall move to assign this matter to the Special Cause Calendar for hearing on the merits with notice to the applicant.