DECISION
This matter is before the Court on two consolidated appeals brought by the Conservation Law Foundation ("CLF") pursuant to G.L. 1956 § 42-35-15 of the Administrative Procedures Act ("APA"). In case No: PC 04-6044, CLF appealed the Rhode Island Department of Environmental Management's ("DEM") decision to issue Champlin's Realty Associates, Inc. ("CRA") a Water Quality Certificate ("WQC"). CLF subsequently filed a second appeal, No: PC 05-1958, in which it challenged the Administrative Adjudication Division's ("AAD") denial of CLF's initial appeal of the issuance of the WQC. DEM and CRA have filed Motions to Dismiss asserting that the Superior Court lacks subject matter jurisdiction to hear these appeals under the APA and that CLF lacks the appropriate standing. As this Court finds that CLF lacks standing to challenge the approval of the particular WQC at issue, DEM's and CRA's Motions to Dismiss are hereby granted without prejudice. CLF is granted leave to file a motion to amend its complaint.
 FACTS AND TRAVEL
In March 2003, CRA applied to DEM's Office of Water Resources ("OWR") for a WQC in order to expand the size of its existing marina located in the Great Salt Pond in Block Island, Rhode Island. Notice of the public comment period was issued on August 1, 2003 and expired 30 days later. DEM, however, failed to provide specific notice to CLF, a non-profit member-supported public interest organization, which alleged in its complaint that it "is comprised of approximately 351 members who live near and use the Great Salt Pond in Block Island, Rhode Island." CLF claims that it was entitled to notice because in or about 2002, it submitted a written request with the OWR to receive notice of all WQC applications.[1]
CRA's application for a WQC was not immediately approved. DEM found that the application was lacking sufficient information in at least 15 categories. While CRA was gathering the additional information necessary to complete its application, on February 11, April 12, and August 26, 2004, CLF provided DEM with extensive written comments in opposition to the application. Subsequently, in June 2004, CRA supplied DEM with the additional information in support of its application. On October 8, 2004, DEM approved CRA's application and issued CRA a WQC. Thirty days later, CLF filed a complaint appealing the issuance of the WQC and simultaneously filed an appeal with DEM's Administrative Adjudication Division ("AAD"). In its appeal, CLF argued that the public comment period should have been re-opened after CRA submitted its additional information because Rule 13(B) of the Water Quality Regulations provides for a 30-day public comment period "once the application is deemed complete by the director." As the additional information was not received until June 2004, CLF argues that the application could not have been deemed complete until that time, and consequently, DEM erroneously failed to re-open the public comment period upon receiving CRA's supplemental information.
The AAD denied CLF's appeal finding that as the matter was not a contested case, AAD lacked subject matter jurisdiction over CLF's request for a hearing. CLF then filed a second complaint with this Court, No: PC 05-1958, challenging the AAD's denial. In response, DEM and CRA filed Motions to Dismiss, asserting that CLF lacked standing to appeal DEM's issuance of a WQC to CRA. CRA and DEM further argued that the Court is without subject matter jurisdiction to hear this appeal as the matter was not a contested case in which a hearing was required and therefore, the matter cannot be appealed by CLF under the APA. By Order dated May 9, 2005, CLF's two actions were consolidated and are now before this Court for decision.
 STANDARD OF REVIEW
In determining whether to grant a motion to dismiss pursuant to Rule 12(b)(6), this Court "views the facts in the light most favorable" to the nonmoving party. St. James Condominium Ass'nv. Lokey, 676 A.2d 1343, 1346 (1996). For purposes of the motion, the allegations in the complaint are taken to be true and "no complaint will be deemed insufficient unless it is clear beyond a reasonable doubt that the plaintiff will be unable to prove his right to relief." Rhode Island OphthalmologicalSociety v. Cannon, 113 R.I. 16, 26, 317 A.2d 124, 130 (1974). A motion to dismiss under Rule 12(b)(6) will only be granted "when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim."Bruno v. Criterion Holdings, Inc., 736 A.2d 99, 99 (R.I. 1999).
 STANDING
Before the Court may reach the merits of CLF's complaint, it must first address CRA's Motion to Dismiss, which alleges in part that CLF has not sufficiently pled the requisite standing to maintain this action. Specifically, CRA argues that CLF is not a person "aggrieved" by DEM's decision to grant CRA a WQC and, therefore, pursuant to G.L. 1956 § 42-35-15, is without standing to appeal that decision. CRA contends that CLF, in its complaint, failed to allege any injury. In response, CLF maintains that it has alleged a sufficient injury to its members and that where environmental damage is threatened, as is the case here, restrictive applications of standing should not foreclose challenges to administrative determinations. Upon review, this Court holds that CLF has failed to sufficiently plead that it was an aggrieved party; consequently, CLF lacks standing to maintain this action.
Section 42-35-15 of the APA requires that in order to have standing to bring an administrative appeal pursuant to that section, a party must be a "person aggrieved." East GreenwichYacht Club v. Coastal Resources Management Council,118 R.I. 559, 564, 376 A.2d 682, 684 (1977). "Courts have construed the phrase `any person aggrieved' as an expression of Congressional intent to accord standing to the fullest extent permitted by the case and controversy provision of Article III." Weber v.Cranston Sch. Comm., 212 F.3d 41, 48 (1st Cir. 2000). To be considered a person aggrieved, though, the person bringing the complaint must allege his or her own "injury in fact." RhodeIsland Ophthalmological Soc'y v. Cannon, 113 R.I. 16, 25-26,317 A.2d 124, 130 (1974); Matunuck Beach Hotel, Inc. v. Sheldon,121 R.I. 386, 394, 399 A.2d 489, 493 (1979). "[O]ne need not besubstantially injured in order to be allowed standing. The line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury." Matunuck,121 R.I. at 396, 399 A.2d at 494.
While standing requires that the party bringing the action allege injury in fact, courts have granted organizations standing to maintain actions for their members who have suffered the injury in fact. The Supreme Court of the Unites States has articulated the following three part test to be used when resolving issues of organizational standing:
 "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested require the participation of an individual member in the lawsuit." Friends of the Earth Inc. v. Laidlaw Envtl. Servs. Co., 528 U.S. 167, 181 (2000).
Groups have thus been allowed standing to represent its members, but the personal nature of the injury has been stressed, and the group challenging the agency action must allege harm to itself or its members. 6 Jacob A. Stein, Glenn A. Mitchell Basil J. Mezines, Administrative Law § 50.04[1] (2005). The Rhode Island Supreme Court has concurred with this holding, cautioning that for a group to have standing for claims of its members, "Mere `interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem is not sufficient by itself to render the organization `adversely affected' or `aggrieved'. . . ." Blackstone ValleyChamber of Commerce v. Public Utilities Comm'n, 452 A.2d 931, 933 (1982) (citing Sierra Club v. Morton, 405 U.S. 727, 739
(1972)).
Despite the strict necessity for a party to show injury in fact in order to maintain standing, courts have, however, liberalized the requirements for "aggrievement" when a party is seeking to protect environmental interests. "As abstract and general an injury to the environment may seem, it is well settled that such injury is sufficient to support standing as to any plaintiff who uses the affected environment." 13 Charles Alan Wright, Arthur R. Miller Edward H. Cooper, Federal Practice and Procedure § 3531.8 (2d ed. 1984). The Supreme Court of the United States has held that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons `for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Friends ofthe Earth, Inc., 528 U.S. at 183 (citing Sierra Club,405 U.S. at 735). In United States v. Students Challenging RegulatoryAgency Procedures ("SCRAP"), 412 U.S. 669 (1973), for example, the Court used a relaxed standard in granting a student group standing to challenge an order to increase rail freight weights that would impact the environment, when the plaintiffs alleged injury in the form of increased air pollution and increased litter. There the plaintiffs specifically alleged in their complaint that they use "`the forests, rivers, streams, mountains, and other natural resources . . . for camping, hiking, fishing, sightseeing, and other recreational [and] aesthetic purposes' and that these activities will suffer as a result of the increased pollution." Id. There the Court found that "generally, SCRAP's members would experience `economic, recreational, and aesthetic harm' because the recreational areasthey patronized would be affected." (Emphasis added). 3 Charles H. Koch, Jr. Administrative Law and Practice § 14.11 (2d ed. 1997) (citing SCRAP, 412 U.S. at 675-76).
However, even though courts have relaxed the standing requirements for groups seeking to protect environmental interests, the organization seeking standing is still required to demonstrate or allege that its members have particularly been injured or will be injured by the challenged activity. For example, in SCRAP, the plaintiffs were allowed standing because the members used the area and their particular use would be harmed by the challenged activity. SCRAP, 412 U.S. at 685. TheSCRAP plaintiffs were found to have alleged a causal relationship between their injury and the challenged activity: an increase in rate would reduce recycling which would increase litter and increase pollution by makers of metals, which in turn would damage the areas used by plaintiffs. Id. at 688-90. Again, standing was found because a particular injury to the members was demonstrated. In contrast, the Court in Lujan v.Defenders of Wildlife, 504 U.S. 555 (1992), found that the plaintiffs' general expression of desire to visit a certain area that may be affected was too vague to qualify as an "imminent injury." Id. at 564. Thus, the plaintiffs were without sufficient injury to bring a complaint to defeat a motion for summary judgment, because the complainants were required to "submit affidavits or other evidence showing, through specific facts . . . that one or more of [their] members would thereby be `directly affected apart from their [own] special interest. . . .'"[2] Id. at 563 (citing SierraClub, 405 U.S. at 735, 739).
Furthermore, this Court is mindful that the Rhode Island Supreme Court has recognized that Rhode Island is a "notice pleading" state, and pursuant to such standard, a claimant need not provide an exhaustive complaint in order to proceed. Our Supreme Court held in Konar v. PFL Life Ins. Co.,840 A.2d 1115, 1118 (R.I. 2004):
 "Pursuant to Rule 8(a)(1) of the Superior Court Rules of Civil Procedure, a claim for relief must contain `a short and plain statement of the claim showing that the pleader is entitled to relief.' Although a plaintiff's complaint need not `set out the precise legal theory upon which his or her claim is based,' the complaint must give `the opposing party fair and adequate notice of the type of claim being asserted.'" Hendrick v. Hendrick, 755 A.2d 784, 791
(R.I. 2000) (quoting Bresnick v. Baskin, 650 A.2d 915, 916 (R.I. 1994) and Haley v. Town of Lincoln, 611 A.2d 845, 848 (R.I. 1992)). "The policy behind these liberal pleading rules is a simple one: cases in our system are not to be disposed of summarily on arcane or technical grounds." Id. (quoting Haley, 611 A.2d at 848).
Consequently, "[o]ne drafting a complaint in a civil action is not required to draft the pleading with a high degree of factual specificity." Hyatt v. Village House Convalescent Home, Inc.,880 A.2d 821, 824 (R.I. 2005).
Despite the liberal standing requirements for environmental groups asserting standing for their injured members and the relaxed pleading requirements found in Rhode Island, this Court holds that CLF has simply failed to allege any specific injury to its members. In its complaints, CLF merely asserted that "CLF is comprised of approximately 351 members who live near and use the Great Salt Pond in Block Island, Rhode Island." (Compl. No. PC 04-6044, ¶ 2) CLF also alleged that "The increased discharge or activity of Champlin's proposed expansion will result in an impact on the Great Salt Pond and will affect the property interests of several of CLF's members." (Compl. No. PC 05-1958, ¶ 8) Furthermore, CLF asserted that "The water quality in the area of proposed expansion is designated as class SA(b) water quality sufficient for swimming and shellfishing and is considered a High Quality Water by RIDEM Water Quality Regulations. The increased discharge or activity of Champlin's proposed expansion will result in an impact on the Great Salt Pond." (Compl. No. PC 04-6044, ¶¶ 7, 8) These paragraphs are the only apparent allegations of injury. However, these paragraphs do not allege what type of injury the members will suffer: the Court cannot be expected to speculate with what injury, if any, the members would be threatened.
CLF argues that the facts in Citizens for the Protection ofthe North Kohala Coastline v. County of Hawaii, 91 Haw. 94,979 P.2d 1120 (1999), are analogous to those herein, and as did the court in North Kohala, this Court should also find that the citizens group (CLF) has standing. In North Kohala, a group of citizens who resided close to and frequently used the coastline were awarded standing to challenge the issuance of a permit to build a resort adjacent to the coastline. However, North Kohala
is distinguishable from the instant matter as the citizens inNorth Kohala alleged that the development would affect their quality of life, in particular their ability to picnic, swim, fish, and boat. North Kohala, 91 Haw. at 101, 979 P.2d at 1127. Thus, the plaintiffs complained of injuries to specific activities in which they engaged. CLF's complaint — simply stating that the WQC would have an "impact" — is barren of such allegations. Unlike an injury alleged to a specific activity such as boating and picnicking, CLF has not alleged that its members will suffer any such harm. In fact, it is unclear whether an "impact" is even an "injury"; CLF does not explain at all what the impact will be or even if it will be harmful. By simply stating that an "impact" will occur, CLF has failed to allege how its members are aggrieved and how such aggrievement could be resolved by a decision from this Court in its favor. The initial inquiry as to standing "`turns largely on the extent to which it appears that plaintiff is suffering tangible harm traceable to the challenged actions of the defendant harm which will be lessened if the requested remedy is granted.'" Women's MedicalCenter of Providence, Inc. v. Roberts, 512 F. Supp. 316, 320
(D.R.I. 1981) (quoting NAACP Boston Chapter v. Harris,607 F.2d 514 (1st Cir. 1979)). CLF has simply failed to allege how its requested relief would cure the injury to its members as it is unclear what injury its members will suffer.[3]
United States Supreme Court precedent instructs that an organization must allege how its members will be injured in order to have standing. Here CLF has failed to allege any such injury. There is no indication how the issuance of the WQC to CRA will affect CLF's members, only that it will have an "impact." Such a bare allegation is insufficient. In Lujan, standing was denied when the group members only pled that they intended to return to the affected area. Lujan, 504 U.S at 564. Even less is pled here as CLF has not complained what harm will befall its members. Similarly, while the plaintiffs in SCRAP were granted standing after alleging what type of pollution would occur and how it would injure their use of the area, here CLF did not allege this casual relationship between the issuance of the WQC and plaintiff's injury. Once again, CLF simply pled that an "impact" would occur; it did not articulate what the impact would be, whether or not such an impact would "aggrieve" CLF's members, or how the aggrievement would be caused by the issuance of the WQC. Therefore, CLF has not adequately alleged an injury to its members that would confer standing in this matter.
The Rhode Island Supreme Court has made clear that even though CLF may have an interest in the matter at hand, "Mere `interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem is not sufficient by itself to render the organization `adversely affected' or `aggrieved'. . . ." Blackstone ValleyChamber of Commerce, 452 A.2d at 933 (citing Sierra Club,405 U.S. at 739). There the conclusory statement that the Chamber of Commerce was aggrieved by an order of the Public Utilities Commission was insufficient to allow plaintiff to maintain the action as the Chamber did "not present any facts that it or any of its members [were] adversely affected by the commission's order. . . ." Id. at 934. Likewise, CLF's complaint also did not present any facts as to how its members were injured. Its allegations that it is a party aggrieved and that the WQC would "impact" its members are also too conclusory to confer standing upon CLF.
While CLF has at this time unsuccessfully alleged sufficient injury to its members for this Court to confer standing upon it, this Court has the authority to permit the plaintiff to amend its complaint so that it may, if possible, allege additional facts and conclusions in support of its standing. The United States Supreme Court has instructed:
 "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." (Emphasis added). Warth v. Seldin, 422 U.S. 490, 501 (1975). (The District of Rhode Island has specifically adopted this position as well. See Women's Medical Center of Providence, Inc. v. Roberts, 512 F. Supp 316, 321 n. 5 (D.R.I. 1981) (citing Warth, 422 U.S. at 501)).
In addition, the trial justice is authorized to permit amendment of a complaint even after a motion to dismiss is granted. Local850, International Association of Firefighters, AFLCIO v. Pakey,107 R.I. 124, 127-28, 265 A.2d 730, 731 (1970); Wachsberger v.Pepper, 583 A.2d 77, 79 (R.I. 1990). Amendments to a complaint are liberally granted absent a showing of extreme prejudice "in order to facilitate the resolution of disputes on the merits rather than on blind adherence to procedural technicalities."Wachsberger, 583 A.2d at 78 (citing Inleasing Corp. v.Jessup, 475 A.2d 989, 993 (R.I. 1984)). However, the motion to amend may be overcome if the party opposing the motion can satisfy its burden of demonstrating that it would incur substantial prejudice if the motion to amend were granted. Id.
at 78-79 (citing Babbs v. John Hancock Mutual Life InsuranceCo., 507 A.2d 1347, 1349 (R.I. 1986)).
Mindful that this Court may "require" a plaintiff to amend its complaint, Warth, 422 U.S. at 501, the Court finds here that granting CRA's motion to dismiss without prejudice, while simultaneously granting CLF leave to file a motion to amend its complaint, is more appropriate. Accordingly, CLF will thereby be permitted to file a motion to amend whereby CRA and DEM will be given the chance to respond to such motion.
 CONCLUSION
While courts have liberally awarded standing to environmental groups seeking to maintain actions to protect the interests of its members, the organization is required to allege that its members will suffer a particular injury in fact. Conservation Law Foundation has failed to meet this requirement. By simply asserting that an impact will occur as a result of DEM's approval of Champlin's Realty Associates, Inc's Water Quality Certificate, Conservation Law Foundation has failed to plead the injury that will be felt by its members. Consequently, as Conservation Law Foundation lacks standing to challenge the issuance of the Water Quality Certificate, Champlin's Realty Associates Inc's Motion to Dismiss is hereby granted without prejudice. Conservation Law Foundation is granted leave to file a motion to amend its complaint to further particularize allegations of fact deemed supportive of its standing. Having so found, this Court need not, at this time, address the parties' additional arguments. Parties shall submit the appropriate judgment for entry by the Court.
[1] CLF argues that once it made such a request, DEM was obligated by law to provide it with notice on WQC applications. The Code of Federal Regulations provides:
 "The regional Administrator will provide public notice of each request for [water quality] certification by mailing to State, County, and municipal authorities, heads of State agencies responsible for water quality improvement, and other parties known to be interested in the matter, including adjacent property owners and conservation organizations. . . ." 40 C.F.R. § 121.23 (2005).
[2] The Court is cognizant that a lesser showing is required for a Motion to Dismiss as opposed to summary judgment as the former is confined to examination of the complaint. As will be discussed herein, however, CLF has failed to meet even this minimum criterion as this Court cannot determine from its complaint what injury it will suffer.
[3] Even if CLF's injury were not construed as an injury to the environment or property interests of its members, but rather as a procedural injury, i.e. insufficient notice, CLF does not have the standing to sue simply because of a "procedural injury." 3 Charles H. Koch, Jr. Administrative Law and Practice § 14.13[5] (2d ed. 1997) (citing Lujan, 504 U.S. 555). "An agency's failure to follow procedures designed to promote public participation in agency decisions [does] not by itself create the requisite `injury in fact.'" Id. In order to convert procedural injury into `injury in fact,' a plaintiff would have to be "seeking to enforce a procedural requirement the disregard of which could impair a separate concrete injury of theirs. . . ."Lujan, 504 U.S. at 572. As discussed above, CLF has not sufficiently pled real harm to a concrete interest that a remedy of the procedural injury would cure; procedural injury alone, therefore, is insufficient to confer standing upon CLF.